UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CITIZENS FOR FREE SPEECH AND EQUAL JUSTICE, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE,<br><br>Defendant. | Case No. 18-cv-01919-BLF<br><br>**ORDER GRANTING THE CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PERMIT REQUIREMENTS EXEMPTION AND THE POLICY 6-4 EXEMPTION**<br><br>[Re: ECF No. 106] |

In this case, Plaintiffs Citizens for Free Speech and Equal Justice, LLC and GTL Enterprises, LLC allege that certain provisions of the City of San Jose's Municipal Code related to signs are unconstitutional under the First and Fourteenth Amendments. The Court previously issued an order granting in part and denying in part the parties' cross-motions for partial summary judgment. ECF No. 75. In that order, the Court denied the parties' requests for summary judgment on the exemption for signs erected by the City because the issue was inadequately briefed. *See* ECF No. 75 at 24–26, 41–42. The denial was without prejudice to filing a subsequent motion (or cross-motions) for partial summary judgment limited to the issue of City-erected signs. *Id.* at 42.

The City has now filed a partial motion for summary judgment on the two exemptions for signs erected by the City: (1) the permit requirements exemption, and (2) the Council Policy 6-4 exemption. *See* ECF No. 106 ("MSJ"); *see also* ECF No. 112 ("Reply"). Plaintiffs oppose the motion. *See* ECF No. 109 ("Opp."). The Court held a hearing on the motion on July 21, 2022. ECF No. 129. For the following reasons, the Court GRANTS the City's motion as to both exemptions.

## I. BACKGROUND

Section 23.02.1310.B of the City's sign ordinance provides as follows:

> Signs erected by the City are exempt from permit requirements but shall comply with all other requirements of this Title, provided, however, that signs erected on City owned land pursuant to Council Policy 6-4, shall comply with Council Policy 6-4, in lieu of the requirements of this Title.

ECF No. 55-2 (Joint Statement of Undisputed Facts ("JSOF")), Ex. 7 at 31–32. Section 23.02.1310.B accordingly divides City-erected signs into two types. First are signs erected on City-owned land pursuant to Council Policy 6-4, which must comply with that Policy instead of the requirements of the City's sign ordinance (the "Policy 6-4 Exemption"). *Id.* Second are signs erected by the City, which must comply with all provisions of the City's sign ordinance except that the City need not comply with the ordinance's "permit requirements" (the "Permit Requirements Exemption"). *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987). The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact

exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

## III. DISCUSSION

At issue in this motion are Plaintiffs' facial[1] challenges to the two sign exemptions contemplated in section 23.02.1310.B: (1) the Permit Requirements Exemption, and (2) Policy 6-4 Exemption. The City moves for summary judgment on both exemptions, and the Court divides its discussion accordingly.

### A. Applicable Law

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. CONST. amend. I). Under the First Amendment, therefore, "a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (internal quotation marks omitted). "Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2226. A court, therefore, must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* In addition, the Supreme Court has considered laws to be content based, even "though facially content neutral," where the "laws cannot be justified without reference to the content of the regulated speech." *Id.*; *see Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) ("A speech restriction is content-neutral if it is justified without reference to the content of the regulated speech." (internal quotation marks omitted)). That is, an ordinance is content based if it discriminates "based on 'the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advertising of Austin, LLC*, 142 S. Ct. 1464,

---

[1] Plaintiffs confirmed at the hearing that their challenges to the constitutionality of these two exemptions are strictly facial challenges.

3

1474 (2022) (quoting *Reed*, 135 S. Ct. at 2218).

### B. Permit Requirements Exemption

The City first moves for summary judgment on Plaintiffs' facial challenge to the Permit Requirements Exemption. Under this Exemption, "[s]igns erected by the City are exempt from permit requirements but shall comply with all other requirements of this Title." § 23.02.1310.B. The import of this language is undisputed: Where the City displays its own message on a sign that is not on City-owned property pursuant to Policy 6-4, the City is required to comply with all provisions of the sign ordinance, except that it need neither pay a fee to itself nor file a permit application.

The City argues that it is entitled to summary judgment on the Permit Requirements Exemption because it satisfies intermediate scrutiny. The City relies on the Ninth Circuit's holding in *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006), that an identical permit requirements exemption was subject to intermediate scrutiny because it was a speaker-based, and not a content-based, restriction. MSJ at 4–5. Plaintiffs respond that it is only through the permitting process that a sign permit may be denied, and so the Permit Requirements Exemption effectively exempts the City from the other requirements of the sign ordinance. *See* Opp. at 1–3. Plaintiffs also assert that the City justifies the Permit Requirements Exemption on solely content-based grounds, which should result in application of strict scrutiny rather than intermediate scrutiny. *Id.* Plaintiffs also dispute whether *G.K. Ltd.* remains good law after *Reed*. *Id.* at 3 n.1.

### i. What Level of Scrutiny Applies

The Court first must determine what level of scrutiny applies by evaluating if the Permit Requirements Exemption is content-based. Laws that are content-based must satisfy strict scrutiny, *see Reed*, 135 S. Ct. at 2227, while laws that are speaker-based and content-neutral must satisfy intermediate scrutiny, *see Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017).

The Court agrees with the City that, based on the *G.K. Ltd.*, there is no genuine dispute of material fact that the Permit Requirements Exemption is subject only to intermediate scrutiny

because it is speaker-based rather than content-based. In *G.K. Ltd.*, the Ninth Circuit evaluated a section of Lake Oswego's sign ordinance that provided that "public signs, signs for hospital or emergency services, legal notices, railroad signs and danger signs" needed to comply with the sign ordinance, but were not "subject to the City's permit and fee process." 436 F.3d at 1076. As to public signs, signs for hospital or emergency services, and railroad signs, the Ninth Circuit found that the provisions were speaker-based because they reflected "the City's preference for not subjecting certain entities—public agencies, hospitals and railroad companies—to the requirements of the permitting and fee scheme." *Id.* at 1077. The exemptions "sa[id] nothing of the City's preference for the content of th[o]se speakers' messages, nor d[id] they allow the City to discriminate against disfavored speech." *Id.* The Ninth Circuit noted that the speakers were still subject to the other provisions of the sign ordinance "concerning the type, number and characteristics of signs that are permissible in the City; it is just that certain speakers need not obtain permits (and pay the associated fee) before posting their signs." *Id.* Finally, "[t]hat the law affect[ed] plaintiffs more than other speakers d[id] not, in itself, make the law content based." *Id.* The Ninth Circuit thus found that that exemption was speaker-based, not content-based, and that intermediate scrutiny applied. *Id.* at 1079–81 (applying intermediate scrutiny analysis).

        The Permit Requirements Exemption here is even more clearly speaker-based than was the exemption in *G.K. Ltd.* The exemption in the sign ordinance reaches all signs erected by a single speaker—the City—without reference to any specific type of content that can be erected under the exemption. The exemption thus reflects the City's "preference" that it need not pay a fee (to itself) or fill out a permit application. As in *G.K. Ltd.*, the signs under this exemption are still subject to the other restrictions in the sign ordinance, including the "type, number and characteristics of signs that are permissible in the City;" they only "need not obtain permits (and pay the associated fee) before posting their signs." 436 F.3d at 1077. Because the Permit Requirements Exemption tracks (and is indeed narrower than) the exemption approved in *G.K. Ltd.*, the Court finds that it is speaker-based rather than content-based.

        Plaintiffs' arguments to the contrary are not persuasive. First, Plaintiffs argue that there is "some question" whether *G.K. Ltd.* remains good law after *Reed*. Opp. at 3 n.1. The Court

recognizes that at least one court in this district has questioned whether *G.K. Ltd.* has vitality post-*Reed*. *See Citizens for Free Speech, LLC v. Cnty. of Alameda*, 194 F. Supp. 3d 968, 983–86 (N.D. Cal. 2016) (involving exemption for city signs from permit requirement *and* substantive provisions of city's sign code). The Court finds, however, that *Reed* does not undermine the continued applicability of *G.K. Ltd.* on the facts of this case for several reasons. First, the Court notes that the code in *Reed* was "not speaker based" because "[t]he restrictions for political, ideological, and temporary signs appl[ed] equally no matter who sponsors them." 135 S. Ct. at 2231. *Reed*'s statements on speaker-based distinctions are thus arguably dicta. Second, even if that portion of *Reed* is binding, the Court agrees with the City that it does not undermine the analytical framework in *G.K. Ltd.* On speaker-based distinctions, the Supreme Court stated that "the fact that a distinction is speaker based does not . . . automatically render the distinction content neutral" because a speaker-based distinction can "reflect[] a content preference." *Id.* at 2230 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)). But *G.K. Ltd.* recognized this very principle—that facially speaker-based distinctions could be subject to strict scrutiny because a speaker preference can reflect a content preference—with a citation to the *same case* cited by the Supreme Court in *Reed*. Finally, three Justices concurring in *Reed* affirmed the general principle from *G.K. Ltd.* that "government entities may also erect their own signs consistent with principles that allow governmental speech [and] may put up all manner of signs to promote safety." *Id.* at 2233 (Alito, J., concurring, joined by Kennedy and Sotomayor, JJ.). Thus, the Court finds that on the facts present here, *Reed* does not undermine *G.K. Ltd.*

With that issue resolved, Plaintiffs' other arguments are more easily addressed. Plaintiffs also contend that the permitting process itself is the only mechanism through which a permit may be denied. Opp. at 1–2. But that was also the case in *G.K. Ltd.*, which upheld an identical exemption. Plaintiffs also argue that the City impermissibly justifies the Exemption with content-based terms, such as that the City is "more likely to promote public health and safety than the non-preferred speaker." *Id.* at 2. Plaintiff's argument that this is impermissible is based on citation to *Boyer v. City of Simi Valley*, 978 F.3d 618 (9th Cir. 2020), but that case is not fatal to the Exemption here for two reasons. First, the exemption in *Boyer* applied to emergency vehicles and

vehicles used "for construction, repair or maintenance of public or private property," exempting them from a substantive provision of the sign ordinance—the general ban on mobile billboard advertising displays. *Id.* at 620. That is unlike the case here, where the Permitting Requirements Exemption requires compliance with all parts of the sign ordinance except paying a fee and filing a permit application. Second, the Ninth Circuit in *Boyer* expressly found that the exemption in that case could not be justified by the preference for government speakers approved in Justice Alito's concurring opinion in *Reed*. While "some of the speech by authorized vehicles covered by the [exemption] would qualify as government speech, . . . [a]s written, the [e]xemption does not limit authorized vehicles only to those messages made by government entities or that are 'effectively controlled' by the City," the Circuit said. *Id.* at 623. That is not the case with the Permit Requirements Exemption, which refers solely to messages displayed by the City and not other speakers.

The Court finds that the Permit Requirements Exemption is speaker-based and not content-based. The Permit Requirements Exemption is thus subject to intermediate scrutiny. *Recycle for Change*, 856 F.3d at 669.

### ii. Applying Intermediate Scrutiny

To survive intermediate scrutiny on summary judgment, the City must show an absence of material fact on four elements. First, the speech at issue "must concern lawful activity and not be misleading." *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2014) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980)). Second, the asserted governmental interest must be "substantial." *Id.* Then, the court examines whether "the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.*

There is no dispute that the speech at issue here is lawful and not misleading. And ample case law establishes that the City's asserted interest in public health and safety are "substantial" interests. *See, e.g.*, *G.K. Ltd.*, 436 F.3d at 1079; *Boyer*, 978 F.3d at 623 (citing *Reed*, 135 S. Ct. at 2218). The City has submitted an unrebutted declaration stating that the messages the City displays pursuant to this exemption promote public health and safety, such as messages regarding

the availability of vaccines and traffic safety announcements. ECF No. 106-1 ("Davis Decl.") ¶ 3.

Second, the Permit Requirements Exemption "directly advances" the stated interest and "is not more extensive than is necessary" to serve that interest. The Permit Requirements Exemption only exempts the City from paying a fee to itself and filling out a permit application. The City remains subject to the substantive provisions of the sign ordinance, including all restrictions on the "type, number and characteristics of signs that are permissible." *G.K. Ltd.*, 436 F.3d at 1077. The Exemption does not affect the availability of forums open to non-City speakers at all. The same forums of communication are open to non-City speakers as they are to City speakers under this Exemption, and those forums are subject to the same substantive requirements of the Sign Code regardless of whether it is the City or another entity speaking. *See id.* at 1080 (exemptions "d[id] not prohibit residents from communicating through signs so long as those signs otherwise comply with the [sign ordinance's] restrictions").

The Permit Requirements Exemption thus satisfies intermediate scrutiny.

\*     \*     \*

Because the City has shown by undisputed evidence that the Permit Requirements Exemption is speaker-based, not content-based, and satisfies intermediate scrutiny, the Permit Requirements Exemption passes constitutional muster. The City's motion for summary judgment on the Permit Requirements Exemption is thus GRANTED.

### C. Policy 6-4 Exemption

The City also moves for summary judgment on Plaintiffs' facial challenge to the second exemption contemplated in section 23.02.1310.B: the Policy 6-4 Exemption. Under this Exemption, "[s]igns erected on City owned land pursuant to Council Policy 6-4, shall comply with Council Policy 6-4, in lieu of the requirements of this Title." § 23.02.1310.B. Unlike the Permit Requirements Exemption, this Exemption requires signs erected pursuant to Policy 6-4 to comply with the requirements of that Policy instead of the requirements of the City's sign ordinance.

Council Policy 6-4 was implemented "[t]o state Council Policy regarding existing and future use of Signs . . . ; to provide guidance regarding implementation of a program that may allow signs . . . on City-owned land; and to confirm the City's continued interest in regulating

8

Signs on City-owned land to promote an aesthetically pleasing environment." Davis Decl. Ex. A ("Policy 6-4") at 2. As is relevant here, Policy 6-4 provides that "[t]he City will only allow the future use of Billboards and Signs displaying Off-Site Commercial Speech on City-owned land, as and where expressly allowed pursuant to this Council Policy 6-4." *Id.* "The City may allow Signs, . . . including Signs displaying Off-Site Commercial Speech on City-owned land pursuant to this [policy] for any of the following purposes, where consistent with applicable state and federal law: . . . [t]o generate revenue for the City," "eliminate visual clutter or blight," or "explore opportunities to enhance the commercial vibrancy of the City in selected locations." *Id.* at 2–3. Policy 6-4 contains site selection criteria for City-owned land where signs may be built under the Policy and identifies 17 locations in the City where such signs may be erected. *Id.* at 3–4, 9. The criteria provide that a site is eligible if the parcel of land "has a General Plan Land Use/Transportation Diagram designation other than Open Space, Parkland, Habitat, Lower Hillside, Agriculture, Private Recreation and Open Space, Open Hillside, Mixed-use Neighborhood, Transit Residential, Urban Residential, or Residential Neighborhood." *Id.* at 4. The Policy states that "the City does not intend to create a public forum on any of the sites that are or may be designated as potential Sign site pursuant to this Policy" and "[t]he City may limit any Sign or Signs approved pursuant to this Policy to only the display of commercial messages." *Id.* at 7.

The City argues that it is entitled to summary judgment on this Exemption because the Exemption is subject to and satisfies intermediate scrutiny. The City says this Exemption, by its plain terms, is limited to off-site commercial speech, which is subject to "a lesser protection" than other constitutionally guaranteed speech. MSJ at 2–3. The City says it is allowed to enact content-based restrictions favoring commercial speech over non-commercial speech on its own property where it has not created a public forum. *Id.* at 3–4. Policy 6-4 has not created a public forum on the 17 approved locations, the City says, because the locations specified in Policy 6-4 have not been opened to the public for expressive conduct. *Id.* at 4.

Plaintiffs respond that there are genuine disputes of material fact as to what level of scrutiny applies to this Exemption, making summary judgment inappropriate. Plaintiffs contend

that there is evidence in the record supporting a finding that Policy 6-4 creates a public forum on signs erected pursuant to that Policy because the City does not in fact restrict messages on those signs to commercial speech or exercise control over what is displayed on the signs. Opp. at 3–5. Plaintiffs point to language in Policy 6-4 that states that the City "may" limit the messages to commercial messages and "may require" the signs to "reserve message space of time for City government speech." *Id.* at 5.

### i. What Level of Scrutiny Applies

As with the Permit Requirements Exemption, the parties' dispute over the Policy 6-4 Exemption centers on what level of scrutiny should apply.

Because this Exemption implicates signs erected on the City's own property, the Court conducts a forum analysis adopted by the Supreme Court to determine what level of scrutiny applies. This analysis is "a means of determining when the Government's interest in limiting the use of its own property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 976 (9th Cir. 1998). A forum analysis divides government property into three general categories: public forums, designated public forums, and nonpublic forums.

The parties agree that the Policy 6-4 sign locations are not traditional public forums, but do not agree on which of the other types of forums they are. *See* MSJ at 4 (contending they are non-public forums); Opp. at 4 (contending they are designated public forums). A designated public forum "is a nontraditional forum that the government has opened for expressive activity by part or all of the public." *Children of the Rosary*, 154 F.3d at 976 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 & n.7 (1983)). Creating a designated public forum "requires a decision 'intentionally opening a nontraditional forum for public discourse.'" *Id.* (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).

In contrast, nonpublic forums are those that the City has not opened generally to expressive conduct by the public. *Id.* Terminology in the forum analysis for nonpublic forums has been inconsistent. Some cases also refer to "limited public forums," which appear to toe the line between designated public forums and nonpublic forms. This is evident from a recent Ninth

Circuit case that defines a limited public forum as "a sub-category of a designated public forum that 'refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics'." *Garnier v. O'Connor-Ratcliff*, --- F.4th ----, 2022 WL 2963453, at *15 (9th Cir. Jul. 27, 2022) (quoting *Hoper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001)). This is arguably where the City claims the Policy 6-4 signs fit, as it says the signs permit solely commercial speech.

Regardless of whether the proper term is a "nonpublic forum" or a "limited public forum," the legal standard is the same. The City is permitted to enact content-based restrictions favoring commercial speech over non-commercial speech on its own property that is a nonpublic (or limited public) forum. *Children of the Rosary*, 154 F.3d at 978 ("In a nonpublic forum, the government has the right to make distinctions in access on the basis of subject matter and speaker identity . . . but must not make distinctions based on the speaker's viewpoint." (cleaned up)); *accord Garnier*, 2022 WL 2963453, at *15 ("In a limited public forum, restrictions on speech and speakers are permissible as long as they are 'viewpoint neutral and reasonable in light of the purpose served by the forum.'") (quoting *Hopper*, 241 F.3d at 1074–75). Those restrictions are subject only to intermediate scrutiny. *Contest Promotions*, 874 F.3d at 601. But if the forum is a designated public forum, the restrictions are subject to strict scrutiny. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009) ("Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum.").

The Policy 6-4 signs are unquestionably not located in traditional public forums. Policy 6-4 specifies 17 locations where signs may be erected on City-owned properties. *See* Policy 6-4 at Att. A. None of these locations is a traditionally public forum. Three of the locations are on the sides of City-owned parking garages elevated above street level. Davis Decl. ¶¶ 6–7. Six of the locations are on the sides of City-owned buildings elevated above street level. *Id.* ¶¶ 7–13. Two of the sign locations are in City-owned parking lots or at a vacant service yard. *Id.* ¶¶ 14, 16. And the remaining Policy 6-4 sign locations are on vacant City-owned land with no direct access to public roadways. *Id.* ¶¶ 5, 17–20.

The question then becomes whether, as Plaintiffs argue, questions of material fact exist as

1    to whether the City has created designated public forums at these locations. Opp. at 3–5.
2    Plaintiffs make two arguments: first, that Policy 6-4 creates a public forum at the designated sign
3    locations because City makes no effort to control or restrict the messages displayed on the signs to
4    only commercial speech, thus creating the opportunity for public expressive activity, *id.* at 3–5;
5    and second, that the City impermissibly reserves for itself the right to transmit its own messages
6    on Policy 6-4 signs, *id.* at 5. Neither argument is persuasive.

*a. City Restrictions on Messages on Policy 6-4 Signs*

There are no genuine disputes of material fact regarding whether the City restricts the messages on Policy 6-4 signs. As an initial matter, Plaintiffs frame this issue as whether the messages on Policy 6-4 signs amount to "government speech." *See* Opp. at 4–5 (citing *Boyer*, 978 F.3d at 624). In that same vein, they urge the Court to consider as supplemental authority the Supreme Court's recent decision in *Shurtleff v. Boston*, 142 S. Ct. 1583 (2022), which further clarified how courts should evaluate whether speech amounts to government speech or private speech. *See* ECF No. 120. But the Court finds that this improperly frames the issue. The City does not contend that the speech on Policy 6-4 signs is government speech such that it avoids heightened constitutional scrutiny. So the question is not whether the content of the signs displayed pursuant to the Policy 6-4 Exemption is City speech or private speech. The question is whether the City has permissibly regulated *private speech* on *its own property* under the forum analysis described above. These are two distinct questions. *See Summum*, 555 U.S. at 469 ("While government speech is not restricted by the Free Speech Clause, the government does not have a free hand to regulate private speech on government property."); *see also id.* at 469–70 (discussing the forum analysis applicable to government regulation of private speech on the government's property); . Contrary to the implication in Plaintiffs' briefing, the City's "exercise[] [of] control over" the messages on the Policy 6-4 signs is relevant to whether the Policy 6-4 signs are designated public forums that have been "opened [to] expressive activity" by the public, not whether the speech itself is City speech or private speech.

With the issue properly framed, the Court finds that there is no genuine dispute of material fact that the City restricts the speech on Policy 6-4 signs to commercial speech. The plain

12

language of Policy 6-4 makes this clear in several instances. The purpose of Policy 6-4 is "[t]o state Council Policy regarding existing and future use of Signs, including Billboards, Programmable Electronic Signs and Signs displaying Off-site Commercial Speech on City-owned land . . . ." Policy 6-4 at 2. And the first numbered paragraph of the Policy states that "[t]he City will only allow the future use of Billboards and Signs displaying Off-Site Commercial Speech on City-owned land." *Id.* Policy 6-4 also indicates that the City exercises additional control over the messages on the sign. The Policy prohibits messages that contain false advertising, incite unlawful activity, or amount to defamatory speech, fighting words, or obscene speech. *Id.* at 7. And while not dispositive by itself, the Policy also states that "the City does not intend to create a public forum on any of the sites that are or may be designed as potential Sign sites pursuant to this Policy." *Id.*

Plaintiffs point to other language in Policy 6-4 that uses the term "may" to describe the City's message limitations on Policy 6-4 signs. Opp. at 5. For example, Policy 6-4 states that the City "may limit" approved Signs to "only the display of commercial messages; "may develop" lists of "goods, products, or services that may not be advertised;" and "may require" the signs to reserve space or time for City speech. Policy 6-4 at 7. But Plaintiffs read these paragraphs in isolation and ignore the other provisions of Policy 6-4 above, which use the mandatory word "will" to describe the limitation to commercial speech. In light of the mandatory language in other parts of Policy 6-4, the Court interprets "may" in the paragraphs Plaintiffs cite to mean that the City is granted the power to enact those limitations, not that it may choose not to do so. *See May*, Black's Law Dictionary (11th ed. 2019).[2]

Plaintiffs also refer to the deposition testimony of the City's person most knowledgeable, who they say confirmed that the City "does not attempt to control the messages that will be displayed" on Policy 6-4 signs. Opp. at 4. Plaintiffs quote the following testimony:

> Q: So there are no other portions of this RFP which speak to restrictions on the content of the message other than section 2.3 of the

---

[2] Indeed, one of the other definitions of "may" is "is required to." *May*, Black's Law Dictionary (11th ed. 2019). "In dozens of cases, courts have held *may* to be synonymous with *shall* or *must*, usu[ally] in an effort to effectuate what is said to be legislative intent." *Id.*

13

          RFP; is that right?

          A:  I believe that is correct.

*Id.* (citing ECF No. 110-1 ("PMK Dep. I") 47:4–12).  But as the City says, Plaintiffs selectively quote the testimony and fail to discuss the document that the witness was questioned about. *Accord* Reply at 1.  The PMK witness was testifying about the City's Request for Proposal RFP OED60-19-1.  *See* ECF No. 112-1, Ex. 1 ("RFP"); ECF No. 112-1, Ex. 2 ("PMK Dep. II") 35:23–36:3 (indicating that the PMK witness was testifying about Exhibit 8, the RFP).  The RFP sought proposals for signs at eight of the 17 sites designated by Policy 6-4.  PMK Dep. II 38:2–10.  The PMK witness testified about section 2.3 of the RFP, which lists restrictions that the City places on messages displayed on those signs.  Among those is a content limitation to "commercial advertising."  *See, e.g.*, *id.* 44:1–5 ("Q:  The contents of the message?  A:  Content, yeah.  So I would say they are restricted to this commercial advertising policy and the benefit that – the benefit that the city was asking for with respect to time, yes.").

        The plain language of the RFP itself also indicates that the City restricts the messages on Policy 6-4 to commercial speech.  Section 2.3.5 of the RFP is entitled "Commercial Advertising Policy."  The introductory paragraph of that section states:

> Only advertising that promotes commercial transactions in compliance with Council Policy 6-4, as it may be amended from time to time, will be permitted.  Any advertising that does not promote a commercial transaction; and that falls within the following categories is also prohibited.

RFP § 2.3.5.  That section of the RFP lists further restrictions on any commercial messages that can be displayed, including prohibitions on advertisements with demeaning or disparaging material, profanity, violence, unlawful goods or services, unlawful conduct, obscenity or nudity, and prurient sexual suggestiveness, among others.  *Id.*  Both the RFP and the PMK testimony make clear that the messages on Policy 6-4 signs are limited to commercial speech.

        Plaintiffs have also filed a motion for leave to file supplemental evidence that they claim "contradicts the City's characterization of its conduct under Policy 6-4."  ECF No. 120.  Plaintiffs claim to have learned that the City approved new signs—to be constructed by private company Clear Channel—pursuant to Policy 6-4 only weeks ago.  *Id.* at 1.  Plaintiffs claim that the City

refused or has failed to produce relevant documents about these signs and provided inaccurate statements in its discovery responses. *Id.* at 1–2. Plaintiffs assert that public records requests have revealed that the City exercises no control over the messages on the signs. *Id.* at 2. The City opposes the motion for leave, both procedurally and substantively. The City says that it in fact produced relevant documents during the discovery period and that its discovery responses were accurate. ECF No. 122. On the substance, the City says that the actual project approval documents (also produced in discovery) and agreement with Clear Channel restrict the messages to commercial speech allowed under Policy 6-4. *Id.* at 2–3.

The Court would be justified in denying the motion for leave to file supplemental evidence on procedural grounds. In its opposition brief, the City has shown that it in fact produced relevant documents about the Clear Channel signs to Plaintiffs. *See* ECF No. 122-1, Ex. A ("Project Plan Approval for Outdoor Digital Billboards," Bates-stamped SJ499–509), Ex. B (additional documents related to the project, Bates-stamped SJ496–498); *see also* Ex. C (excerpts of 2007 agreement between Clear Channel and the City relating to advertising on signs at the airport). The City's discovery responses also accurately indicated that no Policy 6-4 signs "have been erected," rather than that no Policy 6-4 signs had been approved. *See* ECF No. 120-2, Ex. E (objections stating that "no signs have been erected within the [City] pursuant to Council Policy 6-4"). Because the City produced relevant documents and did not provide false discovery responses, the Court could deny the motion for leave.

But even looking to the evidence Plaintiffs want the Court to consider, the Court finds that it supports the City's contention that the Policy 6-4 signs are limited to displaying commercial speech. Plaintiffs do not specifically explain how the exhibits they attach to their request support their arguments, but based on the Court's review, the exhibits refer to agreements made between Clear Channel and the City that the City attaches to its opposition. *See* ECF No. 120-3, Ex. B (second amendment to 2007 Concession Agreement); *id.* Ex. C. (sixth amendment to 2007 Concession Agreement), *id.* Ex. D at 2–3 (referring to 2007 Concession Agreement with Clear

15

1  Channel).³  The City's approval of Clear Channel's plan for the signs in dispute pursuant to that
2  Agreement states under "Advertising content standards" that "[o]nly advertising that promote[s]
3  commercial transactions in compliance with Section 4.6 and 4.7 of the [2007 Concession]
4  Agreement" is permissible on the signs.  ECF No. 120-2, Ex. A at 4.  This provision makes it clear
5  that the content on the signs is restricted to commercial speech.  Section 4.6 of the 2007
6  Concession Agreement states that Clear Channel is limited "to the placement of advertisements
7  from commercial entities where such advertisements do no more than propose the sale, for profit,
8  of goods and/or services."  *Id.* Ex. C at 2.  Section 4.7 contains further limitations similar to those
9  in the RFP, including against profanity or obscenity, deceptive or misleading advertising, or
10  violent content.  *Id.* at 3.  This evidence supports, rather than undermines, the Court's finding that
11  there is no genuine dispute of material fact that the Policy 6-4 signs are limited to commercial
12  speech.
13  There is thus no genuine dispute of material fact that City restricts the messages displayed
14  on Policy 6-4 signs to commercial speech, such that it has not created a designated public forum
15  on those signs.

            *b.  City's Reservation of Space or Time for Its Own Messages*

17  Second, Plaintiffs protest that the City reserves the right to request space and time for its
18  own messages on Policy 6-4 signs.  Opp. at 5.  The City responds that it is permitted to do so
19  under Supreme Court precedent.  Reply at 2.
20  It is undisputed that Policy 6-4 does in fact allow the City to reserve space and time for its
21  own messages.  *See* Policy 6-4 at 7 ("The City may require any Sign approved pursuant to this
22  Policy to reserve message space or time for City government speech.").  But the Court agrees with
23  the City that it is permitted to do so.  The Supreme Court examined a sign ordinance with this very
24  exception in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).  The ordinance in that
25  case contained a ban on certain types of outdoor off-site advertising signs, but contained within

---

³ Plaintiffs' exhibits are appropriate subjects of judicial notice as documents made available by government entities.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  The City does not dispute the authenticity of the documents.

those restrictions an exemption for "government signs." *Id.* at 494. Insofar as the ordinance regulated commercial speech, the Court found that it passed constitutional muster even with the "specifically exempted signs," including government signs. *Id.* at 508–12.[4] Accordingly, the City is permitted to require the Policy 6-4 signs to reserve space or time for its own messages.

\*   \*   \*

Plaintiffs have submitted no evidence that the public has used any of the 17 sites designated by Policy 6-4 to engage in "expressive activity" such that they would become designated public forums. *Children of the Rosary*, 154 F.3d at 976; *accord Garnier*, 2022 WL 2963453, at \*15 (school board trustees' Twitter and Facebook pages were designated public forums where trustees allowed constituents to react to or comment on trustees' posts and trustees occasionally solicited feedback or engaged with the comments). The Court thus finds that there is no genuine dispute of material fact that the Policy 6-4 sign locations are nonpublic forums. The City is thus allowed to enact content-based restrictions favoring commercial speech over non-commercial speech on those signs provided the restrictions satisfy intermediate scrutiny. *Children of the Rosary*, 154 F.3d at 978; *Contest Promotions, LLC*, 874 F.3d at 601.

### ii. Applying Intermediate Scrutiny

The Court now examines whether Policy 6-4 satisfies intermediate scrutiny under *Metromedia*. First, the commercial speech allowed must be lawful and not misleading. *Metromedia*, 453 U.S. at 507. The restriction on protected commercial speech must then "seek[] to implement a substantial government interest, directly advance[] that interest, and reach[] no further than necessary to accomplish the given objective." *Metromedia*, 453 U.S. at 507 (citing *Central Hudson*, 447 U.S. at 563–66).

The Court finds that the Policy 6-4 restrictions meet this standard. First, Policy 6-4 only allows commercial speech that is lawful and not misleading, and Plaintiffs do not suggest otherwise. *See* Policy 6-4 at 7; *accord Metromedia*, 453 U.S. at 507. Second, as before, the City's

---

[4] The Court separately struck down the ordinance's general ban on signs carrying noncommercial speech. *See Metromedia*, 453 U.S. at 512–521. That issue is not present in this case, where the City does not have a generalized ban on signs displaying noncommercial speech.

stated goals of public safety and aesthetics[5] (*see* Policy 6-4 at 2) are substantial government interests. *Metromedia*, 453 U.S. at 507–08. Third, the Policy 6-4 restrictions "reach no further than necessary." "If the [C]ity has a sufficient basis for believing billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Id.* at 508. As in *Metromedia*, the City has stopped short of a total ban, so the restrictions certainly do not go farther than necessary. *Id.*

The Court also finds that Policy 6-4 "directly advances" the City's interest in aesthetics and public safety. The *Metromedia* Court noted the "accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety" and amount to blights on the city landscape. 453 U.S. at 508–10. The *Metromedia* Court also rejected the argument that allowing certain types of commercial speech at the exclusion of others undermined the policy directly advancing the interests in aesthetics and public safety. *Id.* at 511–12; *see also Metro Lights LLC v. City of Los Angeles*, 551 F.3d 898, 907 (9th Cir. 2009) ("[A] ban on some offsite signs still advances traffic safety and aesthetics more than a ban on none."). The Court notes that both *Metromedia* and *Metro Lights* involved starker bans on most offsite commercial speech, versus Policy 6-4's mere limitations on offsite commercial messages. But the principles of *Metromedia* still apply here. Policy 6-4 restricts commercial messages on the City's own property to 17 specifically identified sign sites containing 22 total potential signs. Policy 6-4 further contains limitations on the type, size, height, and illumination of those signs. Policy 6-4 at 4–6. These limitations "directly advance[]" the City's stated interests in public safety and aesthetics by limiting the number, location, and appearance of offsite commercial advertisements on City property.

The Policy 6-4 Exemption accordingly satisfies intermediate scrutiny.

\*     \*     \*

Because the City has shown that the Policy 6-4 Exemption satisfies intermediate scrutiny,

---

[5] Policy 6-4 also aims to generate revenue for and expand the commercial vibrancy of the City. *See* Policy 6-4 at 2–3. Plaintiffs do not suggest that these additional goals undermine the City's interests in public safety and aesthetics for the purposes of the intermediate scrutiny analysis.

18

the Policy 6-4 Exemption passes constitutional muster. The City's motion for summary judgment on the Policy 6-4 Exemption is thus GRANTED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the City's partial motion for summary judgment on the Permit Requirements Exemption and the Policy 6-4 Exemption is GRANTED. The case schedule (ECF No. 82) remains in effect.

Dated: August 1, 2022

_____
BETH LABSON FREEMAN
United States District Judge